ABRAHAM McBRIDE <i>v.</i> PETER CRAWFORD.

It is too late for an owner sued under the mechanics' lien law of 1851, after he has entered upon his defence, and contested the claim upon the ground that nothing is due him from the contractor, to object that the name of the contractor was not in the notice to bring the lien to a close, served upon the owner under § 4 of the act, and in pursuance of which he appears and contests the claim.

The owner is to be allowed for payments, made by him in good faith before the filing of the lien.

Where it appeared that there was no evidence of any accounts or transactions between the parties, except what arose under the building contract; it was *held,* that

there could be no question involving equitable considerations in the marshaling of payments.

A return from the marine or a justice's court should present all the testimony adduced in the court below, so that the appellate court may see whether the judgment, and the reasons assigned therefor by the justice, are supported by the evidence.

GENERAL TERM, NOVEMBER, 1852.

THE plaintiff in this suit obtained a judgment in the marine court, against the defendant, as the owner of a building in the city of New York, for materials furnished to a contractor, who was employed by the owner in the erection. The proceeding was under the act of 1851, " for the better security of mechanics," &c. An appeal was taken to this court. The facts, so far as they can be ascertained from the return, are given in the opinion.

*Wm. C. Carpenter*, for the appellant.

*Francis Cahill*, for the respondent.

BY THE COURT. DALY, J.—No points are submitted upon this appeal on the part of the appellant, and the return made by the justice is so imperfect, including his statement of the ground upon which he rendered judgment, that it is exceedingly difficult to know what points were considered or determined by the justice.

The defendant, by entering upon the subject matter of his defence, waived any objection to the form of the notice to appear in court, served under § 4 of the act. He appeared and contested the claim, upon the ground that nothing was due by him to the contractor; and it does not lie with him now to object that he was not notified of the name of the contractor to whom the materials were furnished.

The materials were furnished by McBride after the passage of the act. The bill given in evidence is dated in August, 1851, and the contractor, Mead, testified that they were furnished about the middle of August. There is nothing in the objec-

tion that the contract for the building of the houses was made with Mead, or that it was assigned to Scofield before the passage of the act.

The judge certifies that he found that there was due, from the owner to the contractor, on the original contract, $31. That he estimated the contractor's claim for extra work at the price determined, by the *weight of testimony*, without stating what that amount was; and after crediting the contractor with it, he found that there was due upon such extra work a *balance* of $22 50. He determines that there was $31 due upon the original contract, after allowing the defendant the amount of the payments he had made, and allowing for two liens which were prior in date to the plaintiff's; and yet there is nothing in the evidence returned about these liens, nor from which the amount of payments or liens, that reduced the sum due upon the contract to $31, can be collected, nor any thing that will show how he arrived at that amount. Nor is any evidence returned showing by what payments the claim for extra work was reduced to $22 50. From the inspection of the return, it would seem that the justice had taken the affidavit of the appellant, and without reading it added his reasons or grounds for the judgment. If he had read it, he must have seen that it was utterly impossible for the appellate court to know, upon such a statement of the evidence, whether his judgment was right or not. Such a return was not just to the parties, nor what the appellate court had a right to expect when called upon to review it.

He certifies that he did not allow the defendant certain payments upon the original contract, amounting to $43, because the particular application of these payments was not directed by the defendant, and equity required that they should not be applied upon an account upon which the plaintiff had a lien, but should be applied to the other account between the parties. We are totally at a loss to understand what is meant by this. There is nothing in the evidence returned showing that there were other accounts between the parties; nor that there was any other transaction between the contractor and the de-

fendant, except the contracts for the erection of these houses. All that appears in the evidence respecting the payments to the amount of $43, is the statement of Mead, that on Oct. 11, two days after the building was finished, he received orders upon the defendant, from three different persons, to that amount. If any presumption arises from the testimony, it is that they were orders upon the defendant, to be paid out of the balance then due. We held, in *Doughty* v. *Devlin*, that the owner was to be allowed for all payments made by him in good faith to the contractor, before he had notice of the lien. The notice of the plaintiff's lien was filed on the 5th of Dec., 1852, and if these payments were made by the defendant to the contractor before that time, he was entitled to be allowed them. The utmost, therefore, that the plaintiff could recover, would be $10 ; that is, a judgment and execution to enforce the lien to that amount. There being no evidence of distinct and different accounts between the contractor and the defendant, or of any account except what grew out of the erection of these buildings, the case did not raise or present any question of the consideration of equities in the marshalling of payments. Under any consideration, therefore, the judgment would have to be reduced to this amount and modified in form. But I think it would be better for the rights of the parties, from the imperfect view of their case presented by the return, to reverse the judgment and leave them to try the matter over again.

Judgment reversed.